UNITED STATES of America, Appellee,

v.

Mark A. FERGUSON, Defendant,
Appellant.

No. 94–1403.

United States Court of Appeals,
First Circuit.

Heard June 6, 1995.

Decided July 20, 1995.

Roderick B. O'Connor, Springfield, MA, for defendant, appellant Mark A. Ferguson.

Thomas G. Frongillo, Asst. U.S. Atty., Boston, MA, for U.S.

Before BOUDIN, Circuit Judge, LYNCH, Circuit Judge, and SCHWARZER,* Senior District Judge.

LYNCH, Circuit Judge.

On June 24, 1993, a federal grand jury returned a 38–count indictment charging appellant Mark A. Ferguson and twelve others with violations of the drug laws. The indictment charged Ferguson with (1) conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (Count 2), (2) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count 4); (3) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 7, 8, 14, 17); (4) distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 11); (5) attempted distribution of heroin in violation of 21 U.S.C. § 846 (Count 12); and (6) unlawful use of a communication facility in violation of 21 U.S.C. § 843(b) (Counts 34, 35, and 37). Ferguson was also charged with aiding and abetting in violation of 18 U.S.C. § 2 on all of the substantive drug counts (Counts 4, 7, 8, 11, 12, 14 and 17).

On December 3, 1993, Ferguson pled guilty to Counts 2, 7, 8, 11, 12, 14, 17, 34, 35, and 37 of the indictment pursuant to a written plea agreement with the United States. Count 4 was dismissed. On April 7, 1994, the district court sentenced Ferguson to 120 months imprisonment and five years supervised release on Counts 2, 8, 14, and 17, to be served concurrently; 120 months imprisonment on Counts 7, 11, and 12, to be served concurrently with one another and with the sentences for Counts 2, 8, 14, and 17; and 48 months imprisonment on Counts 34, 35, and 37, to be served concurrently with one another and with the sentences for Counts 2, 8, 14, and 17. The district court also ordered Fer-

* Of the Northern District of California, sitting by    designation.

guson to pay a $500 special assessment, $50 for each count. On April 12, 1994, Ferguson appealed, seeking to withdraw his guilty plea.

■ Because Ferguson seeks to withdraw his plea following the imposition of his sentence, he must show that the plea proceedings were marred by " 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " Fed.R.Crim.P. 32(d) [now Rule 32(e) ] advisory committee's note to 1983 amendments (quoting *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *see also United States v. Japa,* 994 F.2d 899, 902 (1st Cir.1993) (stating that the benchmark for setting aside a plea post-sentencing is "a fundamental defect or a miscarriage of justice"). Ferguson's appeal does not meet this standard.

■ Ferguson argues that his plea should be set aside because the district court failed to take adequate steps at his plea hearing to determine that his guilty plea was knowingly and voluntarily made. Specifically, Ferguson contends that the district court violated Federal Rule of Criminal Procedure 11(c)(1) by failing to explain the charges to him and to determine that he understood the charges. Rule 11(c)(1) requires, among other things, that the court accepting the plea "address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... (1) the nature of the charges to which the plea is offered...." The record shows that Ferguson's plea neither was a miscarriage of jus-

tice nor resulted from procedures inconsistent with the rudimentary demands of fair procedure.[1]

The record of the plea hearing demonstrates that the district court took a number of steps to ensure that the concerns underlying Rule 11(c) (particularly those underlying 11(c)(1)) were addressed. The district court asked Ferguson his age (25) and educational background (11th grade). Ferguson informed the court that he had read the indictment, had discussed it with his attorney, and that his attorney had explained to him what it meant. The district court also asked Ferguson whether he understood that he had been charged with crimes similar to the ones that the district court had described earlier in the hearing to Yancy Calhoun, a codefendant charged under the same counts who pled guilty at the same hearing. Ferguson, who had been present for the description of the charges against Calhoun, stated that he did.[2]

Further, during the course of the plea hearing, the district court informed Ferguson of the charges in the indictment; it informed him of the potential penalties he faced; it informed him of the rights he would be waiving by pleading guilty; it ensured that the factual basis of each offense was presented in open court in Ferguson's presence; it repeatedly asked him if he understood; and it asked questions of Ferguson about each of the substantive offenses to determine whether he understood what conduct the government alleged formed the basis of his criminal conduct.[3] When Ferguson asked to be allowed to consult with his mother, he was

---

1. Ferguson's argument on appeal is limited to the question of whether the district court complied with Rule 11(c)(1). He does not argue that the district court failed to comply with the requirements of Rule 11(d) when it failed to ask Ferguson at the plea hearing whether his willingness to plead guilty resulted from discussions with the attorney for the government. *See* Fed. R.Crim.P. 11(d) ("The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney."). Any argument based on Rule 11(d), therefore, has been waived. *See, e.g., Pignons S.A. de Mecanique v. Polaroid Corp.,* 701 F.2d 1, 3 (1st Cir.1983) (arguments not presented in initial brief on appeal are waived).

2. Ferguson had also executed a written plea agreement. Indeed, he had executed the agreement after refusing to execute an earlier one proffered by the government because he did not like one of its clauses.

3. The district court asked Ferguson specifically about all of the counts to which he was pleading guilty, except one—Count 2, the conspiracy charge. Although the district court did not ask Ferguson specifically about Count 2, the nature of the conspiracy charge was explained thoroughly to codefendant Patrick Culbreath in Ferguson's presence, and Ferguson does not claim on appeal that such a procedure was inadequate to apprise him of the nature of that charge.

permitted to do so. Finally, the court specifically asked Ferguson whether he was entering his plea voluntarily and Ferguson replied that he was.

On appeal, Ferguson appears to refer to only four counts, Counts 8, 12, 14, and 17, as being problematic. Ferguson points out that during the plea hearing, he denied some of the factual foundations of these counts and exhibited reluctance to admit that he knew that drugs were involved in the transactions underlying those counts. To be sure, some of Ferguson's responses to the court's questions about his involvement in Counts 8, 12, 14 and 17 show some confusion on his part over the precise requirements for the offenses. But when Ferguson gave such responses, the district court made additional inquiries of Ferguson, asking him what he understood his role to have been in the offense. And when questioned on these counts, Ferguson often admitted to facts sufficient to uphold the charges and, more importantly, exhibited a basic understanding of the conduct which the government alleged was criminal.[4] The court's detailed inquiry on these counts supports the conclusion that Ferguson understood the nature of the charges against him on these counts. *See United States v. Pellerito,* 878 F.2d 1535, 1542 (1st Cir.1989) (a searching Rule 11 inquiry was "a circumstance of some importance" in showing that the district court properly determined that the defendant understood the nature of the charges to which he was pleading guilty).

Indeed, Ferguson's claim that he did not understand the nature of these charges is seriously undercut by his clear admission at the plea hearing of his guilt on Count 7, a distribution charge under 21 U.S.C. § 841(a)(1) arising from a transaction in which Ferguson delivered cocaine to a co-conspirator's house to have it cooked into crack.[5] Ferguson concedes on appeal that he understood the nature of the charge contained in Count 7. Counts 8 and 14, which, like Count 7, were each charges of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), involved conduct identical in nature to that charged in Count 7, and simply involved acts occurring on different dates

---

4. Count 8 was based on a July 16, 1992 drug transaction at the Brigham and Women's Hospital at which Ferguson was present. Although at first Ferguson denied knowing that a drug sale was occurring, upon further questioning from the court, he admitted to the court that he entered the undercover officer's vehicle and told him that the persons delivering the cocaine would "be there." Count 12 was based on a September 15, 1992 attempted sale of heroin at the New England Medical Center. As to this count, the government stated that Ferguson had delivered to an undercover officer three bricks of what was supposed to have been heroin and was later determined to be procaine, a cutting agent. Although Ferguson initially denied his involvement in the transaction, Ferguson eventually agreed with the government as to everything it stated regarding the transaction during the plea hearing except its claim that he had been the person who physically delivered the bricks to the undercover officer. He admitted being involved in the transaction and that he believed at the time of the transaction that it involved drugs.

Count 14 involved an October 29, 1992 drug transaction at a Farmer's Market on River Street in Boston at which Ferguson was present. Again, although Ferguson initially indicated that he was unaware that a drug transaction was occurring when he was at the Farmer's Market, he later stated that while he was at the Farmer's Market lot in his car he "surmised" that the transaction involved drugs.

Finally, Count 17 involved a February 4, 1993 drug transaction at a Mobil gas station in Mattapan that Ferguson aided. As Ferguson notes in his brief, he admitted at the plea hearing to delivering a message to one of the principals that the transaction would go forward on a certain date.

5. The government has noted that because of this admission, Ferguson's appeal, even if successful, will have no effect on his term of imprisonment because Ferguson was sentenced to a concurrent 120 months of imprisonment on Count 7. This fact does not mean that this appeal fails to present a live controversy, however. The other counts apparently impose longer periods of supervised release than Count 7 (five years for Counts 2, 8, 14, and 17, as compared to three years for Count 7) and each count increased the amount of the assessment ($50 per count). Moreover, Ferguson may face collateral consequences for his convictions on the additional counts. *Cf. Benton v. Maryland,* 395 U.S. 784, 787–91, 89 S.Ct. 2056, 2058–60, 23 L.Ed.2d 707 (1969) (the existence of concurrent sentences does not bar consideration of challenges to multiple convictions because there may be collateral consequences to the multiple convictions). Thus, there is enough at stake in this appeal to have us decide whether Ferguson may properly withdraw his plea as to the other counts.

involving the same basic actions. Similarly, Count 12, while styled as an "attempt" because of the chemical composition of the substance distributed, was also essentially a distribution charge.[6] Under these circumstances, Ferguson "should reasonably have ... understood," *United States v. Cotal–Crespo,* 47 F.3d 1, 4 (1st Cir.1995), the nature of the charges to which he was pleading guilty on Counts 8, 12, and 14.

Although the defendant's understanding of the nature of the charges to which he is pleading is a "core concern" of Rule 11, *see Cotal–Crespo,* 47 F.3d at 4, in the absence of a total failure to address this concern, the plea cannot be set aside unless the irregularities in the plea proceeding affect the defendant's "substantial rights." Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). Ferguson has not articulated how the district court's plea proceedings affected his substantial rights. He does not argue that he pled guilty to crimes he did not commit. He did not object to the presentence report, which established a factual basis for the plea. *Cf. United States v. Zorrilla,* 982 F.2d 28, 30 (1st Cir.1992) (district court's failure to determine factual basis for the plea was harmless error under Rule 11(h) where the presentence report and probable cause hearing revealed that appellant's conduct satisfied the elements of the crime charged), *cert. denied,* —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993). Nor does Ferguson suggest that if the court had conducted a further inquiry into his understanding of the nature of the offense, he would not have pled guilty. *See id.* at 31 ("As appellant has suffered no concrete prejudice other than entering a plea he now regrets, we cannot set his plea aside.").

Given that Ferguson has not shown a sufficient deviation from the Rule 11 requirements to overcome Rule 11(h), it follows that he has not met his burden under Rule 32(e) of showing a " 'fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " Fed.R.Crim.P. 32(d) [now Rule 32(e) ] advisory committee notes to 1983 amendments. Ferguson is not entitled to withdraw his guilty plea.

For the foregoing reasons, Ferguson's judgment of conviction is *affirmed.*

---

6. Ferguson's involvement in Count 17 was presented on an aiding and abetting theory. Whether or not Ferguson fully understood the subtleties of aiding and abetting law, at the hearing he acknowledged a basic understanding that he was being charged with facilitating the offense when he stated that he told the undercover officer that the drug transaction of February 4 was "on" for that night.