Santiago **CARABALLO TERAN**, Plaintiff

v.

**UNITED STATES of America**, Defendant.

Civil No. 94–2116(GG).
Criminal No. 90–004(GG).

United States District Court,
D. Puerto Rico.

July 31, 1997.

34. *See* Explanation of the Forms of Retirement Allowance Payment, for each Plaintiff, DE 140, exh. 2.

Santiago Caraballo Teran, Texarkana, TX, pro se.

Wilfredo Rios Mendez, Caguas, PR (Defense Atty. in Cr. 90–004).

Guillermo Gil, U.S. Atty., Jorge E. Vega Pacheco, Chief Criminal Div., Hato Rey, PR, for U.S.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

Pending before this court is petitioner Santiago Caraballo Teran's *pro se* motion to vacate and set aside his imprisonment sentence, pursuant to the provisions of 28 U.S.C. § 2255. Both his trial counsel and the government demur.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 1989, a United States Customs aircraft was dispatched to survey a suspicious vessel located southeast of Santo Domingo, Dominican Republic. When the aircraft arrived at the reported position its crew observed a coastal freighter bearing the name "VITA NOVA" on its side. The coordinates of the freighter were! relayed to the Coast Guard Cutter Vashon, which was patrolling the Mona Passage. When the Vashon arrived, around 6:30 p.m., the "VITA NOVA" was not displaying a flag. The Vashon tried to communicate repeatedly with personnel on board the "VITA NOVA" by means of radio and loudspeaker, both in English and Spanish, to no avail. *See,* Transcript (TR) pp. 132–136.

In addition, the "VITA NOVA" turned off the lights and began, to maneuver erratically.[1] A boarding party was assembled under the supervision of Lt. Mark Ogle, Executive Officer of the Cutter Vashon. Accordingly, a small inflatable boat was launched and situated; alongside the "VITA NOVA". Co-defendant José R. Polo Caraballo's served as the spokesperson of the crew. When asked about the nationality of the vessel, he responded that it was registered in Malta, a Mediterranean island. He also informed Lt. Ogle that their last port of call was Acaro, an island off Venezuela and were heading towards Haiti, that they had a cargo of cement, that the captain had left earlier in the day and that he was Cuban. See, TR pp. 132–143.

Lt. Ogle requested Polo Caraballo's consent to board the vessel, but it was denied. Instead he was instructed to call Barranquil-

---

1. *U.S. v. Leuro–Rosas,* 952 F.2d 616, 622 (1st Cir.1991) (citing *U.S. v. Piedrahita–Santiago,* 931 F.2d 127, 131 (1st Cir.1991) and *U.S. v. Beltran,* 761 F.2d 1, 7 (1st Cir.1985) as stating that failure to respond to radio calls, coupled with evasive maneuvering, implies knowledge of wrongdoing).

la[2], Colombia, for permission. *Id.* While watching the "VITA NOVA", Lt. Ogle saw smoke coming out of its pilot house and water coming out of the engine. The Coast Guard immediately offered assistance to save the boat, but the same was refused. *Id.*, at 146. At that point, and since the vessel was in international waters, Lt. Ogle radioed the Vashon and asked the captain to proceed with a "Statement of No Objection" (SNO) through the U.S. Department of State for exercise of the United States' law enforcement authority on board the vessel. *Id.*, at 147. While they waited for the SNO, they kept watching the "VITA NOVA", which continued sinking. Around 10:00 p.m., the crew finally decided to abandon the ship, put on life jackets and jumped into a life raft. *Id.*, at 150.

The Coast Guard pulled the life raft away from the "VITA NOVA" and towed it over to the Vashon, where the crew members were detained. Since the freighter was in a shipping channel, Lt. Ogle returned to the "VITA NOVA" and boarded it to make sure it sank abruptly avoiding other ships to come along and run into it. They accomplished this by cutting the cargo hatch straps. *Id.*, at 151–152. Once the "VITA NOVA" sank, among its debris, the Coast Guard found floating ten bales or duffle bags containing a white powdery substance, which when field tested proved positive for cocaine. All seven (7) crew members were indicted on one count of aiding and abetting each other to possess 305 kilograms (gross weight) of cocaine on board a vessel without nationality and subject to the jurisdiction of the United States, with the intent to distribute it, in violation of 46 U.S.C.App. §§ 1903(a)(C)(1)(A) & (f) and 18 U.S.C. § 2. (**Docket entry # 1 in Criminal Case No. 90–004**). After three (3) days of trial, having the government rested and defendants' motions for acquittal been denied, all co-defendants entered a guilty plea. (**Docket entry # 57, 59, 66 & 67**). For sentencing purposes the court only considered the amount of cocaine introduced into evidence, that is, 10 kilograms. Accordingly, Mr. Caraballo Terán was sentenced to one hundred and twenty (120) months of imprisonment and five (5) years of supervised release. (**Docket entry # 89 & 90**).

Petitioner argues that he was denied effective assistance of counsel, his guilty plea was not voluntary, he was a victim of an illegal search and seizure, there was insufficient evidence to convict him, the court lacked subject matter jurisdiction because the government violated international law and there were errors in the narrative of the offense conduct of the Pre–Sentence Report. In order to properly assess Mr. Caraballo–Terán's allegations we ordered both the U.S. Attorney and Wilfredo Rios Méndez, Esq., his former trial counsel, to file a response stating their respective positions. They timely complied with our order, obviously opposing petitioner's motion. Although granted twenty (20) days, as of today Mr. Caraballo Terán has not replied to said briefs.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment of the U.S. Constitution guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Lema v. U.S.,* 987 F.2d 48, 51 (1st Cir.1993). This right does not require neither a letter perfect nor a successful defense. *Perry v. Leeke,* 488 U.S. 272, 279, 109 S.Ct. 594, 599, 102 L.Ed.2d 624 (1989). In order to prevail on a Sixth Amendment claim one must satisfy the two prongs set forth in *Strickland v. Washington,* supra. These are: "(1) that counsel's representation fell below an objective standard of reasonableness; and (2) that prejudice resulted." *Matthews v. Rakiey,* 54 F.3d 908, 916 (1st Cir.1995) (citing *Strickland,* at 694, 104 S.Ct. at 2068).

As to the first prong, the touchstone is whether counsel has brought to "bear such skills and knowledge as will render the trial as a reliable adversarial process." *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994) (citing *Strickland,* at 687, 104 S.Ct. at 2064). That is, the proper measure of attorney perfor-

**2.** Barranquilla is a well known drug port. **See,** *U.S. v. Leuro-Rosas,* 952 F.2d 616, 622 (1st Cir. 1991).

mance remains simply reasonableness under the prevailing professional norms taking also into consideration the totality of circumstances. *Id.* The evaluation as to this prong demands a fairly tolerant approach. *Scarpa,* at 8. Specifically, *Strickland* provides:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all to tempting for a Defendant to second guess counsel's assistance after conviction and adverse sentence . . . because of difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, a Defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland,* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Lousiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). In conclusion, a petitioner bears an extremely heavy, burden. *Bucuvalas v. U.S.,* 98 F.3d 652, 657 (1st Cir.1996). The *habeas court* must evaluate the challenged conduct from counsel's perspective at the time, considering the totality of the circumstances before it, and making every effort to eliminate the distorting effects of hindsight. *Strickland,* supra. *See, Perron v. Perrin,* 742 F.2d 669, 673 (1st Cir.1984).

As to the second prong, petitioner must have suffered actual prejudice as a result of counsel's decision. *Strickland,* at 693, 104 S.Ct. at 2067–68. This "prejudice" element also presents a high hurdle to overcome. *Argencourt v. U.S.,* 78 F.3d 14, 16 (1st Cir. 1996). Even if counsel's error is perceived as professionally unreasonable, that by itself does not warrant setting aside the judgement. *Strickland,* at 691, 104 S.Ct. at 2066. The defendant must show that the error actually had an adverse effect on the final outcome of the trial. That is, he must affirmatively show that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 693–94, 104 S.Ct. at 2067–68.

Petitioner argues that he was denied an effective assistance of counsel because he was practically coerced by his counsel into entering a guilty plea by being informed that because of his Colombian nationality he would not be acquitted and could be, sentenced to life imprisonment. In addition, petitioner claims that his counsel failed to investigate the facts of the case to properly assert available defenses, to advise him of his right to appeal and to file an appeal on his behalf. A quick glance at petitioner's; claims and the criminal record of this case demonstrates that petitioner's list of counsel's alleged failures is unsubstantiated and based on conclusory and bald allegations of a Sixth Amendment violation.

## GUILTY PLEA

■ We commence our analysis with petitioner's allegations that his trial counsel induced him to enter a guilty plea and that it would be a miscarriage of justice to uphold the same when he was practically illiterate, had no knowledge of the American Judicial System, did not understand the English language, and he thought he had to do it since all the other co-defendants had done the same. These contentions are self-serving and totally refuted by the record.

"A defendant does not enjoy an absolute right to withdraw a plea of guilty, once it has been entered". *U.S. v. Miranda–Santiago,* 96 F.3d 517, 522 (1st Cir.1996) (citing *U.S. v. Isom,* 85 F.3d 831, 834 (1st Cir.1996)). A defendant, who never sought to withdraw his plea before the district court and challenges it for the first time on collateral attack under a § 2255 motion, bears a high hurdle. He must, prove that "a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure, ensued during the Rule 11 colloquy." **See,** *U.S. v. Miranda,* at 522 & n. 9; *U.S. v. Ferguson,* 60 F.3d 1, 2 (1st Cir.1995). Rule 11 of the Fed.R.Cr.Proc. requires that before accepting a plea of guilty, the court must address the defendant personally in open court, insure that the plea is voluntary and inform the defendant of, and determine that he understands, several fundamental rights he possess as well as the nature of the charges to which the plea is offered, the possible penalties he will be exposed to, among other related matters. **See,** Rule 11(c) & (d).

See also, *U.S. v. Hyde,* —— U.S. ——, ——, 117 S.Ct. 1630, 1632, 137 L.Ed.2d 935 (1997).

During the change of plea hearing, the court engaged, with the assistance of the court's interpreter, in a detail Rule 11(c) & (d) colloquy with each of the defendants, being the court's first determination that the defendants were competent to plea guilty. The transcript of the hearing further demonstrates that prior to pleading guilty, petitioner discussed, in Spanish, both the case and the guilty plea with his attorney. See, Docket entry # 122. The criminal record corroborates the above and specifically, the fact that counsel Rios and petitioner discussed that the possible sentence ranged from 10 years to life imprisonment,[3] petitioner's rights under the Constitution and the U.S. laws and the consequences of pleading that way. See, Docket entry # 66 [4] and 67.

Notwithstanding the above, the court took the time during the hearing to instruct and insure, before accepting the guilty plea, that petitioner understood his rights to a jury trial, to the presumption of innocence, to confront the government's witnesses and cross examine them, to testify on their own behalf and offer evidence, the government's burden of proof, among others, and that by pleading guilty he would be waiving said rights. In short, petitioner's contention that he was not knowledgeable of the American Judicial System is totally refuted by the record. More so, in light of the fact that the guilty plea was entered after he had the opportunity of personally experience and exercise these rights. It should be kept in mind that the change of plea was done after the government had presented all of its evidence and the defense's motions for acquittal had been heard and denied by the trial court.

On the other hand, the court also informed petitioner, and it was understood by him, the nature of the charge to which he was pleading guilty, the mandatory minimum and maximum possible penalty provided by law, the effect of a supervised release term and the fact that the court is required to consider any applicable sentencing guideline but may depart from the same. Last but not least, petitioner accepted all the facts that were being charged against him. In sum, the court found that Mr. Caraballo's plea was counseled and voluntary. Therefore, said plea neither was a miscarriage of justice nor resulted from procedures inconsistent with the rudimentary demands of fair' procedure. On the contrary, Mr. Caraballo's guilty plea was valid.

■ Additionally, we find that, since the guilty plea had been entered after the government had presented all of its evidence and the court had denied the motion for acquittal, petitioner has failed to overcome the presumption that, under the circumstances of this case, counsel's advise to so plead was sound trial strategy. Moreover, petitioner's claim that his counsel was ineffective because he failed to investigate the facts of the case to properly present available defenses, namely, that he had no knowledge of the, contraband, that he was the object of an illegal search and seizure and that the government violated international law when it intervened. with the "VITA NOVA", are without merit. First, this assertion is contradicted by Mr. Caraballo's own declarations during the change of plea hearing to the effect that he had no complaints against counsel Rios and was satisfied with his representation. See, TR pp. 12–13, Docket entry # 122. As well, the record shows that counsel Rios requested discovery from the government and the same were complied with by the U.S. Attorney. See Docket entry # 12, 19, 25, 29, 37, 46, 49. Besides, after the government rested, and obviously before entering the guilty plea, Mr. Caraballo, through counsel Rios, joined, the motions for dismissal and acquittal argued by other counsels wherein the issues of sufficiency of the evidence, violation of the Fourth Amendment and of international law

---

3. We take notice that this is the applicable range of imprisonment for the offense charged to petitioner. **See,** 46 U.S.C.App. § 1903(g)(1) & 21 U.S.C. § 960(b)(1)(B)(ii).

4. This is Mr. Caraballo's petition to enter a guilty plea. The document consists of a questionnaire filled out by petitioner with the aide of his counsel, is signed by both and every page bears petitioner's initials. Most important, the questions posed are both in Spanish and English.

were properly presented for the court's consideration. **See**, TR pp. 340–355.

## EFFECT OF A VALID GUILTY PLEA

It is hornbook law that when a criminal defendant pleads guilty, he admits " 'that he committed the crime charged against him.' " *U.S. v. Broce*, 488 U.S. 563, 568, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989) (quoting *North Carolina v. Alford*, 400 U.S. 25, 32, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). **See also**, *U.S. v. Grant*, 114 F.3d 323, 328 (1st Cir.1997). In other words, a valid guilty plea waives all challenges to both the factual and legal foundations, of the charge. *U.S. v. Martinez–Martinez*, 69 F.3d 1215, 1223 (1st Cir.1995); *U.S. v. Carvell*, 74 F.3d 8, 14 n. 10 (holding that a guilty plea and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain the judgment and sentence).

■ Considering that petitioner pleaded guilty to aide and abet to possess cocaine on board a vessel without nationality [5] and subject to the jurisdiction of the United States, with the intent to distribute it, he is unable to collaterally attack his conviction on the grounds that there was insufficient evidence, and that he was the victim of an illegal search and seizure, as he purports to do in the instant action. **See**, *U.S. v. Cordero*, 42 F.3d 697, 699 (1st Cir.1994) (finding that challenges to the sufficiency of the evidence are not jurisdictional defects that can be brought up after a guilty plea to attack the conviction). This is even more so in view that he specifically accepted during the change of plea hearing that he was aiding and abetting the other co-defendants aboard the "VITA NOVA" to possess certain amount of cocaine, that the possession was with the intent to distribute it and that he knew that it was in fact cocaine. **See**, TR pp. 26–27.

■ By the same token, Mr. Caraballo is precluded from asserting that his sentence should be vacated because the government lacked jurisdiction to intervene with the "VITA NOVA". During the change of plea hearing petitioner admitted that he was aware that the "VITA NOVA", although once registered in Malta, was no longer registered there and that it was a stateless. vessel. TR p. 25. By admitting that the "VITA NOVA" was a stateless vessel, petitioner acknowledge, that the U.S. government had jurisdiction in this case because the, vessel was one without nationality. *U.S. v. Caicedo*, 47 F.3d 370 (9th Cir.1995). For purposes of 46 U.S.C.App. § 1903(a) "a vessel subject to the jurisdiction of the United States includes . . . a vessel without nationality", that is, "a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed." **See**, 46 U.S.C.App. § 1903(c)(1)(A) & (c)(2)(A). **See also**, *U.S. v. Rosero*, 42 F.3d 166 (3rd Cir.1994); *U.S. v. Martinez–Hidalgo*, 993 F.2d 1052, 1055–57 (3rd Cir.1993) cert. denied 510 U.S. 1048, 114 S.Ct. .699, 126 L.Ed.2d 666. That was precisely what happened in this case, where Mr. Polo Caraballo, when asked about the nationality of the "VITA NOVA", responded that it was registered in Malta but the Government of Malta denied registry of the "VITA NOVA".

■ Likewise, petitioner is precluded from attacking his conviction on the grounds that the government violated international law. "A claim of failure to comply with international law in the enforcement of the [Maritime Drug Law Enforcement Act', under which petitioner was charged,] may be invoked **solely** by a foreign nation, and failure to comply with international law shall not divest a court of jurisdiction or otherwise constitute a defense to any proceeding under this [Act]." 46 U.S.C.App. § 1903(d) (Supp. 1996) [6] (Emphasis supplied).

As additional grounds to sustain the claim of ineffective assistance of counsel, Mr. Cara-

---

**5.** It should be noted that the Government of Malta denied registry of the "VITA NOVA".

**6.** Congress intent to preclude defendants from attacking their indictments and criminal convictions on the basis of a violation of international law was further clarified by a recent amendment to § 1903(d) expressly stating that:

> Any person charged with a violation of section [1903] shall not have standing to raise the claim of failure to comply with international law as a basis for a defense.

ballo argues that counsel Rios failed: (1) to advise him of his right to appeal; (2) to file an appeal on his behalf; and (3) to object to the narrative of the offense conduct in the Pre–Sentence Report. First, petitioner was instructed by the court in two different occasions of his right to appeal, once during the change of plea hearing and at the sentencing hearing. **See, TR p. 14 & Docket entry # 89.** Second, as we have previously stated, when a defendant enters a counseled and voluntary guilty plea and later on, tries to attack the judgment of conviction, the inquiry is ordinarily confined to whether the sentencing court had jurisdiction. *U.S. v. Broce,* supra. The grounds upon which petitioner has endeavored to attack his conviction in the instant action do not fall under such a category. Hence, Mr. Caraballo has failed to show what actual prejudice he has suffered by not having appealed the judgment in this case.

Finally, by asserting that there were several errors in the narrative of the offense conduct, petitioner is merely reiterating the same arguments we have already disposed of. Thus, there is no need to revisit them. However, even if Mr. Rios alleged omission to contest these errors was true and could be deemed as unreasonable, petitioner fails to state how said failure prejudiced him during the sentencing phase. Likewise, Mr. Caraballo's contention that Mr. Rios did not discuss the content of the Pre–Sentence Report with him is lacking the needed showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. We take notice that Mr. Rios contested the Pre-sentence Report on two grounds, namely, that petitioner was entitled to a reduction for role in the offense and for acceptance of responsibility. **See,** Exhibits 4 & 5 of Mr. Rios Reply, Docket entry # 8; Docket entry # 80A of Criminal Case No. 90–04. The record shows that he was able to obtain a two-level reduction for acceptance of responsibility. **See,** Docket entry # 90. In view of the above and having petitioner failed to overcome the two prongs of the Strickland test, we conclude that Mr. Caraballo's arguments are lacking in merit.

**WHEREFORE,** for the reasons herein stated, Mr. Caraballo's § 2255 motion is hereby **DISMISSED.** Judgment will be entered accordingly.

**SO ORDERED.**

