# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3336

IQBAL MATHUR,

*Plaintiff,*

MARILYN F. LONGWELL and JOHN P. MADDEN,

*Appellants,*

*v.*

BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 95 C 4097—**James L. Foreman**, *Judge.*

ARGUED OCTOBER 16, 2002—DECIDED JANUARY 24, 2003

Before COFFEY, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Iqbal Mathur won a jury verdict in this employment discrimination and retaliation case and petitioned for attorneys' fees. In this appeal, the appellants, two of Mathur's attorneys, claim that the district court improperly reduced the proffered hourly rate when it used local rates to determine the award. Because we agree that the district court abused its discretion when making this modification, we vacate the district court's judgment and remand for further proceedings.

## I. BACKGROUND

Mathur brought this action after Southern Illinois University (SIU) decided not to hire him as the dean of SIU's College of Business. He alleged that he was discriminated against during the hiring process and that SIU retaliated against him for filing discrimination charges by removing him from his position as chair of SIU's Finance Department. When he was seeking legal representation to help him with his suit, Mathur was rebuffed by every lawyer he approached in the area around SIU who he felt was experienced enough to handle his case. These attorneys claimed that various conflicts of interest prevented them from litigating against SIU. On a friend's recommendation, he retained Marilyn Longwell, an attorney based in Chicago who specializes in employment discrimination and other civil rights claims. Longwell and her associate took on Mathur's case, and though the discrimination claim was defeated on a motion for summary judgment, a jury awarded Mathur back pay and compensatory damages for the retaliation claim.

The district court refused to enter judgment on the verdict and granted judgment as a matter of law for SIU regarding the retaliation claim. On appeal, Mathur hired Robert Sheridan, who worked on the case with his then-associate, John Madden. Following oral argument before us, Madden left Sheridan's employ and opened his own practice. We reversed the district court's grant of judgment as a matter of law regarding the retaliation claim, *see Mathur v. Bd. of Trustees of S. Ill. Univ.*, 207 F.3d 938 (7th Cir. 2000), and Mathur retained both Longwell and Madden to deal with post-appellate matters. After Mathur's award was finalized, he filed a petition for attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k), the provision of Title VII that allows such awards. SIU filed its response objecting to the fee petition and the district court asked for additional briefs regarding the reasonableness of the

claimed hourly rates. Shortly after these briefs were submitted, the district court awarded attorneys' fees in the amount of $86,106.71 in fees and $5,505.40 in costs to Mathur. Two of Mathur's attorneys, whose proffered compensation rates were lowered by the district court, now appeal.

## II. ANALYSIS

### A. Jurisdiction

We begin by addressing the jurisdictional propriety of this appeal, since it has been brought by two of Mathur's attorneys, not Mathur himself. Title VII awards attorneys' fees to the "prevailing party," *not* the attorney. *See* 42 U.S.C. § 2000e-5(k). However, "it is common to make the award directly to the lawyer where . . . the lawyer's contractual entitlement is uncontested." *Richardson v. Penfold*, 900 F.2d 116, 117 (7th Cir. 1990). Since an attorneys' fee award is considered part of the costs of a litigation, *see* 42 U.S.C. § 2000e-5(k), the award goes straight from the plaintiff to counsel and is not intended to serve as additional compensation for plaintiffs. This means that "the question whether the motion for fees is in the name of the party or his attorney is a 'technicality,'" because "it would exalt form over substance to deny the motion for fees" if an attorney, and not the plaintiff, is the named party. *Lowrance v. Hacker*, 966 F.2d 1153, 1156 (7th Cir. 1992); *see also Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Cartage Co.*, 76 F.3d 114, 116 (7th Cir. 1996).

We requested memoranda from both the appellants and appellees discussing whether or not we have jurisdiction to hear this appeal. The appellants noted that under the district court's fee award that they are appealing, Mathur's obligations to the attorneys were completely satisfied. Mathur does not dispute the fee award amount, so any ad-

ditional fees that would be awarded on appeal would not benefit him, but rather his attorneys. Therefore, the appellants have properly demonstrated that they are actual parties in interest, and we have jurisdiction to hear their appeal.

B. Calculation of Attorneys' Fees

As we have often explained, attorneys' fees are assigned a "lodestar" amount, calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995). Once this amount is calculated, the district court may adjust the amount up or down to take into account various factors regarding the litigation.[1] When reviewing these decisions, we use an abuse of discretion standard, since the district court is in a better position to evaluate such a fact-based issue. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 551 (7th Cir. 1999); *Bankston v. Illinois*, 60 F.3d

---

[1] These factors include:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995); *see also Hensley*, 461 U.S. at 430 n.3.

1249, 1255 (7th Cir. 1995). In addition, we give deference to the district court because we wish to avoid protracted litigation over fees and because strict uniformity in fee awards "is not so compelling as to justify a high level of scrutiny." *Miller v. Artistic Cleaners*, 153 F.3d 781, 784 (7th Cir. 1998).

In its order awarding fees, the district court reduced the number of hours submitted by Mathur's attorneys by five percent to take into account the failure of Mathur's discrimination claim. This reduction is not contested by the appellants. However, the appellants challenge the district court's reduction of the hourly rates used to calculate the lodestar amount. The district court explained the downward adjustment by saying:

> Ms. Longwell has charged $225 for her non-court time, $250 for her court time, $200 per hour for associate time, and $50.00 per hour for paralegal time. John Madden has charged $175 per hour. . . . Upon review, the Court finds that the attorney rates charged by Marilyn F. Longwell & Associates and by John Madden are in excess of the market rates in Southern Illinois. The market rates for Southern Illinois as applied to [Longwell] would be $125 for Ms. Longwell's non-court time, $150 for her court time, $100 per hour for her associate time, and $100 per hour for John Madden.

When a district court reduces either the rate or hours proffered by an attorney when calculating the lodestar amount, it must provide a clear and concise statement why it chooses to do so. *See Spellan*, 59 F.3d at 645.

SIU argues that the reduction was warranted because the appellants, who had the burden of proving their hourly rate, *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir. 1993), failed to provide information regarding their rates throughout the litigation, thereby giving the district

court discretion to use local rates. However, in its state-ment discussing the appellants' proffered rates and hours, the district court described the rates without comment-ing on the supporting evidence, and the court did not re-duce the rates of other attorneys involved in the case whose supporting evidence was equivalent to the appel-lants' documentation. There is no indication that the district court adjusted the appellants' rate downward because of a lack of data. In fact, supplemental briefs and affidavits specifically addressing the appellants' hourly rates were submitted at the district court's request.

In contrast to its terse discussion of the applicable hourly rates, the district court gave detailed comments as to why it felt a reduction in the proffered amount of hours was warranted. Given this commentary by the district court, we believe that it did not adjust downward the appellant's rates for a lack of proof, but for the reason it indicated, *i.e.*, to use rates on par with those in south-ern Illinois.

Fee-shifting statutes in civil rights legislation are in-tended to allow litigants access to attorneys who would otherwise be inaccessible, given the low retainers many plaintiffs can afford. *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *Hensley*, 461 U.S. at 429; *Estate of Borst v. O'Brien*, 979 F.2d 511, 517 (7th Cir. 1992). For that reason, our preference is to compensate attorneys for the amount that they would have earned from pay-ing clients, *i.e.*, the standard hourly rate. *See Gusman*, 986 F.2d at 1150. An attorney may charge higher than the community's average if she possesses an unusual amount of skill, the ability to emphasize with the jury, investiga-tive abilities, or other qualities which command a pre-mium. However, if the district court decides that the prof-fered rate overstates the value of an attorney's services, it may lower them accordingly. *See Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982) ("A judge may well

approach high rates with skepticism, and he may exercise some discretion in lowering such rates. For example, an attorney may be overqualified . . . or an attorney may bill at a high rate but rarely collect at that rate.").

The district court grounded its decision on our opinion in *Spegon*, where we said that the lodestar rate is "the rate that lawyers of similar ability and experience in the community charge their paying clients for the type of work in question." 175 F.3d at 555 (quoting *Bankston*, 60 F.3d at 1256). Considering "the community" for purposes of rate-setting to be southern Illinois, the district court here used that area's local rates when determining the lodestar amount. This method of accounting misreads *Spegon* and our other cases discussing this issue. In *Spegon*, the attorney was a *local* practitioner rather than someone from another area. Immediately after the passage in *Spegon* quoted above, we said that "[t]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Id.* at 555 (quoting *People Who Care v. Rockford Bd. Of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996)). Only if an attorney is unable to provide evidence of her actual billing rates should a district court look to other evidence, including "rates similar experienced attorneys in the community charge paying clients for similar work." *Id.* at 855. Therefore, SIU is correct in asserting that looking to the southern Illinois legal community's rate would have been appropriate, but only if the district court provided an adequate reason to use a rate other than the presumed market rate, *i.e.*, the appellants' market rate.

However, just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward. When a local attorney has market rates that are higher than the local average, "[a] judge who departs from this presumptive rate must have some reason other than the ability to identify a

different average rate in the community." *Gusman*, 986 F.2d at 1151. Similarly, if an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount, though if "local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service." *Chrapliwy*, 670 F.2d at 768. Though SIU claims that local attorneys "could do as well" as the appellants, Mathur claimed that none of these attorneys were available. When searching for local counsel, he found that the attorneys he talked to were either insufficiently experienced to bring such a case, or were unable to bring an adversary litigation against SIU due to conflicts of interest.

While a district court has the discretion to modify an out-of-town attorney's rate if "there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were rendered," Mathur was unable to find anyone who could provide those services. *Chrapliwy*, 670 F.2d at 769. Just as it was reasonable for the plaintiffs in *Chrapliwy* to find experienced attorneys from Washington, D.C., and New York City to litigate their class action, it was also reasonable for Mathur to search for an attorney in Chicago after he exhausted his options in southern Illinois. When a plaintiff finds out-of-town counsel after being unable to find a local attorney, "the court should make the allowance on the basis of the chosen attorney's billing rate unless the rate customarily charged in *that attorney's locality* for truly similar services is deemed to require adjustment." *Id.* (emphasis added). By simply declaring that the lower rate was appropriate because of the prevailing local rates in southern Illinois, without regard to the quality of services rendered by the appellants, the district court abused its discretion.

SIU claims that local counsel with sufficient expertise was available, pointing to an age discrimination case that was litigated against it by a local practitioner. While that may be true, a potential litigant's search for counsel need not be meticulously comprehensive before attorneys from other areas are considered. The realities of the legal community today mean that though *some* attorney probably could have represented Mathur, one factor or another prevented them from taking the case when he needed a lawyer. Local attorneys could be overwhelmed with their current caseloads and unable to take on a potentially protracted litigation. A client's case could present novel or untested legal theories which an attorney may not believe will be successful. The attorney may simply not believe that the prospective client has a winnable case or, as in *Gusman*, the case may be too complex and require more resources than local law firms are able to provide. Whatever the search process a litigant uses to choose legal representation, a good-faith effort to find local counsel is all that is necessary, lest the meticulous generation of a comprehensive log of inquiries deter plaintiffs from bringing worthy discrimination suits, frustrating the rationale for statutes enabling private civil rights suits. *See Estate of Borst*, 979 F.2d at 517.

As we noted above, the appellants based their fee petition on their rates for 2001, rates current as of the date of the fee petition. We have allowed district courts to use either current rates or past rates with interest when calculating the lodestar amount, *see Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994), because either method provides "[a]n adjustment for delay in payment [which] is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee. . . ." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987); *Soto v. Adams Elevator*

*Equip. Co.*, 941 F.2d 543, 553 (7th Cir. 1991). In its order, the district court described the appellants' hourly rate using the 2001 rates it was provided. Since it did not describe the supplemental briefing it received as inadequate when making this finding, and did not modify the proffered current rates of the other attorneys involved in the litigation, we believe that the 2001 rates submitted by the appellants are the proper rates to use when calculating the lodestar amount in this case.

## III.  CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court awarding $86,106.71 in attorneys' fees and $5,505.40 in costs, and REMAND for proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*