In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3834

JEFFBOAT, LLC and SIGNAL MUTUAL
INDEMNITY ASSOCIATION, LTD.,

*Petitioners,*

*v.*

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS and
LARRY O. FURROW,

*Respondents.*

Appeal from a Decision of the Benefits Review Board
of the United States Department of Labor
No. 2006-LHC-01156—**Donald W. Mosser**, *Administrative Law Judge.*

ARGUED DECEMBER 9, 2008—DECIDED JANUARY 13, 2009

Before FLAUM, WOOD, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. This case comes to us from a decision by the Benefits Review Board upholding the Administrative Law Judge's (ALJ) award of attorneys' fees to Larry Furrow, who filed a workers' compensation claim against his employer, Jeffboat, LLC, that was settled

shortly before trial was scheduled. On appeal, Jeffboat argues that Furrow's counsel never established that the hourly rate that she requested was in line with the prevailing market rate for legal services in Indiana, where Furrow brought this case. Jeffboat also argues that the Administrative Law Judge improperly resorted to discretionary factors, in particular the quality of representation from Furrow's counsel, when he made the award. Jeffboat claims that such factors are only appropriate once the ALJ has made a proper determination about the applicable market rate.

For the following reasons, we affirm the decision of the Benefits Review Board.

## I. Background

Larry Furrow, an employee of Jeffboat, LLC in Jeffersonville, Indiana, suffered from hearing loss and filed a workers' compensation claim under the Longshoreman and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*. The Office of Workers' Compensation Programs originally approved the petition but, when Jeffboat continued to contest it, referred the matter for a formal hearing before Administrative Law Judge Donald W. Mosser in the summer of 2006. Approximately six days before the hearing, at a pre-trial conference, the parties reached an agreement on the amount of compensation that Jeffboat would pay to Furrow; the only issue the parties did not settle at the conference was Jeffboat's liability for any attorneys' fees.

Furrow filed a petition for attorneys' fees on August 31, 2006, attaching an affidavit claiming $1,689.66 in attorneys' fees from his case. As an appendix, he attached a previous case, *Decker v. Jeffboat*, decided in the same locality by ALJ Rudolf Jansen, approving attorneys' fees ranging from $250 to $261 per hour. His appendix also included citations to the *Connecticut Law Tribune*, *The National Law Journal*, the 1994 *Survey of Law Firm Economics* by Altman Weil, and other sources, establishing that billing rates for partners in Connecticut, where Furrow's attorney was based, usually ranged from $199 to $420 per hour. Jeffboat filed its objection to the claim for attorneys' fees on November 21, 2006, including appendices. The appendices included a case from nearby Covington, Kentucky in 1999 establishing the rate for a Longshore Act case at $150 per hour, and three reported cases from Indiana which, while not involving the Longshore Act, found reasonable attorneys' fees in a range from $136 to $175 per hour.

On January 10, 2007, Judge Mosser granted Furrow's petition for attorneys' fees in the amount Furrow requested. In approving the petition, Judge Mosser cited *Decker v. Jeffboat* and 20 C.F.R. 702.132, which provides that an ALJ can consider the quality of an attorney's representation when making an award of attorneys' fees. Judge Mosser concluded that, "Ms. Olson's excellent representation of her client produced successful results for which she should be compensated with the reasonable amount requested." App. 2. Jeffboat appealed the award to the Benefits Review Board, which upheld the award. Jeffboat then appealed to this court.

## II. Discussion

This court reviews the ALJ's award of attorneys' fees for an abuse of discretion. *Ziegler Coal Co. v. Director, OWCP*, 326 F.3d 894, 902 (7th Cir. 2003). Attorneys' fees are calculated using a "lodestar" amount, which is the number of hours that an attorney worked on the case multiplied by a reasonable hourly rate. *Mathur v. Bd. of Trustees of Southern Il. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). An administrative law judge is also allowed to consider various discretionary factors, such as the quality of an attorney's representation, when making an award. *See* 20 C.F.R. 702.132.

Jeffboat argues that the attorneys' fee award was improper in this case because Furrow's attorney established that the hourly rate she requested ($261 per hour) was the prevailing market rate in Connecticut, where Furrow's attorney is based, but did not establish that it was in line with the prevailing market rate in Indiana, where the case was litigated. In support of its contention that the attorney must show that her request for a reasonable attorneys' fee is in line with local market rates, Jeffboat cites the Supreme Court's decision in *Blum v. Stenson*, 465 U.S. 886, 895 (1984), which holds that the applicant for attorneys' fees bears the burden of demonstrating that the amount requested is in line with the prevailing hourly rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*

Jeffboat concedes that this circuit has allowed the party seeking attorneys' fees to create a presumption that an hourly rate is reasonable where the attorney demonstrates that the hourly rate she has requested is in line with what she charges other clients for similar work. *Mathur*, 317 F.3d at 743. They argue, however, that where the hourly rate is greater than the market rate in the area in which the case was litigated, the party requesting the attorneys' fees must first demonstrate that he was unable to secure local counsel. Furrow never made such a showing in this case, they argue. Nor did Furrow's counsel present evidence that the rate she had requested was the rate that she normally charged clients for workers' compensation cases. Without such a foundational showing, Jeffboat argues that the discretionary factors, such as those contained in 20 C.F.R. 702.132, are irrelevant, since those factors can only be used to increase an hourly rate that the plaintiff has already shown to be reasonable.

Jeffboat then argues that the attorneys' fees requested in this case were unreasonable. Their supporting evidence comes from the four cases that they brought before the ALJ establishing that the market rate for attorneys' fees in southern Indiana is considerably less than the $261 per hour that the ALJ awarded. Only one of these cases, *James E. Huff v. Mike Fink Restaurant, Benson's Inc.*, 33 BRBS 179 (Nov. 22, 1999), involved the Longshore Act, and that case was decided in 1999. Of the other three cases, *Franklin College v. Turner*, 844 N.E.2d 99, 105 (Ind. App. 2006), was a collection action for delinquent Perkins Loans; *Hill v. Davis*, 850 N.E.2d 993, 997 (Ind. App. 2006), was a landlord-tenant dispute; and *Johnson v. Dawson*, 856

N.E.2d 769 (Ind. App. 2006) was a dispute over the construction of a second garage in a residential subdivision.

Jeffboat appears to be reading extra requirements into both the Supreme Court's case law and this circuit's case law. The precedents on this issue require the attorneys' fee to be reasonable within the "community." *See Blum*, 465 U.S. at 895; *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999) (finding that a reasonable hourly rate is "the rate that lawyers of similar ability and experience in the community charge their paying clients for the type of work in question."). Jeffboat takes the word "community" to mean "local market area." It would be just as consistent, however, to read the word as referring to a community of practitioners; particularly when, as is arguably the case here, the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market.

Nor is Jeffboat correct that *Mathur* requires proof that a plaintiff first attempted to find local counsel before hiring an out-of-area attorney. *Mathur* held that "if an out of town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount . . . ." *Mathur*, 317 F.3d at 744. While we also noted that the judge could adjust an out-of-town attorney's rate downward when calculating the lodestar amount if local counsel could have provided comparably effective legal services and the rate of the out-of-town practitioner was higher than the local market rate, the decision to do

so was within the discretion of the judge making the award. *Id.* Contrary to Jeffboat's argument, our cases have consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation. *Spegon*, 175 F.3d at 555.

Nor is Jeffboat correct in asserting that Furrow had not established that his attorney's hourly rate was in line with the attorneys' fees requested in this case. The petition for attorneys' fees, while acknowledging that Furrow's attorney did not bill by the hour, established a baseline hourly rate of $250 to $340 per hour, and substantiated this rate with evidence that it was consistent with market rates for specialized legal services in Connecticut. Given our preference for awarding attorneys' fees that are commensurate with what an attorney would otherwise have earned from paying clients, the ALJ did not abuse his discretion by using $261 per hour as a reasonable hourly rate for purposes of the lodestar calculation. Nor did he abuse his discretion by not adjusting this rate downward in light of Jeffboat's evidence about market rates in Indiana; as we explained above, Jeffboat's cases were not especially relevant to this case. At any rate, whether or not a given matter could have been handled just as competently by a local attorney is a discretionary issue left to the judge making the attorneys' fee award, and the ALJ was entitled to find that Furrow would need to seek counsel outside of southern Indiana. We note, however, that the hourly rate used in this case is apparently not out of line for Longshore Act cases in the same locality.

*Decker v. Jeffboat* established that an ALJ in the same jurisdiction had previously awarded similar legal fees for similar work. Jeffboat only challenges the relevance of *Decker* by claiming that they did not dispute the attorneys' fee award in that case. Nothing in the case law requires that a party show that the hourly rate they have requested has previously been disputed and upheld, however. Indeed, a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not.

As the award was in line with the reasonable market rate, the ALJ obviously did not make an upward adjustment to the market rate when considering the factors cited in 20 C.F.R. 702.132. Rather, that section of the regulations instructs administrative law judges to calculate an award of attorneys' fees based on a reasonable hourly rate multiplied by the number of hours worked, and to consider among other factors the quality of an attorney's representation when making the award. As the decision in the present case was a reasonable one, the quality of Furrow's attorney is just an additional factor supporting the award.

We thus conclude that the ALJ did not abuse his discretion by determining that the hourly rate requested by Furrow's attorney was reasonable and in line with the hourly rate for lawyers of similar ability and experience in the community.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the Benefits Review Board upholding the ALJ's award of attorneys' fees.