**Christopher J. HEDER, Plaintiff,**

v.

**CITY OF TWO RIVERS, Defendant.**

No. 00–C–0274.

United States District Court,
E.D. Wisconsin.

March 31, 2003.

948

949

Steven R. Olson, Radosevich Mozinski & Cashman, Manitowoc, WI, for Plaintiff.

Everett E. Wood, Davis & Kuelthau, Milwaukee, WI, Thomas A. Cabush, Kasdorf Lewis & Swietlik, Milwaukee, WI, for Defendant.

## *DECISION AND ORDER*

ADELMAN, District Judge.

Plaintiff Christopher Heder ("Heder") sued the defendant City of Two Rivers ("City"), his former employer, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(k), and Wis. Stat. § 109.03 seeking to recover unpaid overtime and monies withheld from his paychecks. He recovered most of what he sought and now petitions for an award of attorneys' fees pursuant to 29 U.S.C. § 216(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Heder was employed as a firefighter and, during his term of employment, the City implemented a policy requiring all firefighters to become certified as paramedics. Under a memorandum of agreement between the City and the union representing firefighters, Heder would receive $5.58 per hour (half his hourly rate) for time spent obtaining the required certification; and, if he left his position within three years of beginning the paramedic training, he would owe the City the cost of the training plus any wages he received for time spent in training and any paramedic premium pay he received after becoming certified. Heder left after two-and-a-half years, and the City withheld all of his pay for his last three weeks of work ($2,281) pursuant to the memorandum of agreement. The City asserted that Heder owed a total of $7,641, $5,360 of which still remained due after the City had withheld his final paychecks.

Heder hired attorney Steven R. Olson ("Olson"). After consulting with Heder, Olson contacted the City and proposed a settlement whereby Heder would agree not to pursue a claim against the City and the City would, in exchange, retain the $2,281 recouped from Heder's final paychecks and agree to seek no further repayments. The City rejected the offer.

Heder then filed suit arguing that the City paid him less overtime than required by the FLSA and recouped training expenses and wages from his final paychecks in violation of Wis. Stat. § 109.03. The City counterclaimed for the unpaid training expenses, wages and premium pay. At issue was a total of approximately $8,900 ($2,281 which the City withheld from Heder's final paychecks + $5,360 which the City said Heder still owed under the memorandum of agreement + approximately $1,259 which Heder alleged the City owed him for overtime).

The parties filed cross motions for summary judgment. I held that (1) the FLSA entitled Heder to more overtime compensation than he was paid for time spent in training; (2) the memorandum of agreement was unenforceable to the extent it required Heder to repay wages and premium pay and because it contained a cliff, rather than an amortized repayment schedule; and (3) the City's withholding of Heder's final paychecks violated Wis. Stat. § 109.03 and the FLSA's minimum wage requirements. Under my decision, Heder was entitled to all the money in dispute. Judgment was entered on November 1, 2001. By that time, the City had indicated its intent to appeal. The judgment, therefore, indicated that Heder's application for reasonable attorneys' fees and costs would not be due until after the appeal.

The City appealed. The parties filed appellate briefs, and the Seventh Circuit Court of Appeals requested oral argument. On July 10, 2002, the court of appeals affirmed in part and reversed in part and

returned the case to me for a determination of the amount of damages. The parties agreed that under the Seventh Circuit's decision, Heder was entitled to all the money in dispute except the cost of the tuition and books, which was approximately $1,400, and the City was entitled to nothing. Thus, Heder obtained a judgment for $3,540 ($1,259 in unpaid overtime + $2,281 withheld from Heder's paychecks).

I urged the parties to resolve the issue of attorneys' fees themselves. Heder offered to settle his claim for $25,000, but the City rejected the offer. Thus, Heder moved for an award of attorneys' fees and costs, and the City opposed the motion.

When Heder first obtained counsel, Olson charged him a fee of $125 per hour. Pursuant to their agreement, interest would be charged at a rate of 18% compounded monthly for fees unpaid after 30 days. In March 2000, the hourly rate increased to $135. Also in the spring of 2000, Heder began to have difficulty making payments. Heder and Olson renegotiated their fee agreement to require Heder to pay immediately only 50% of all fees billed, with the balance to be paid at the conclusion of the case.

## II. DISCUSSION

■ Title 29 U.S.C. § 216(b)[1] entitles a prevailing plaintiff in a FLSA action to reasonable attorneys' fees and costs. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir.2001). The provision exists to enable plaintiffs to employ reasonably competent lawyers

without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of FLSA. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir.1984) (citing *Maddrix v. Dize*, 153 F.2d 274, 275–76 (4th Cir.1946)).

### A. Attorneys' Fees for Work Related to the Merits of the Case

■ Reasonable attorneys' fees are determined using the lodestar approach. *Small*, 264 F.3d at 707. Under this approach, the court must first determine the number of hours reasonably expended on the merits of the litigation. *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893–94 (7th Cir.2001). Then the court must determine a reasonable hourly rate. *Id.* at 894. Multiplication of these two amounts results in the lodestar, *Small*, 264 F.3d at 707, which is presumed to be a reasonable fee, *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).[2] However, the court can discount or increase the lodestar based on a variety of factors. *Bankston v. Illinois*, 60 F.3d 1249, 1255 (7th Cir.1995) (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), *overruled on other grounds by Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)).

### 1. Hours Reasonably Expended

■ The plaintiff has the burden of proving the reasonableness of the hours

---

1. Title 29 U.S.C. § 216(b) provides that "[t]he court in such action [to recover wages under the FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

2. *City of Burlington* addresses a petition for attorneys' fees under the Solid Waste Disposal

Act and the Clean Air Act, not the FLSA. 505 U.S. at 559, 112 S.Ct. 2638. However, the Supreme Court has stated that its rulings regarding one fee-shifting statute are generally applicable to others. *See, e.g., id.* at 562, 112 S.Ct. 2638; *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 4, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

expended and should "exclude from his or her request excessive, redundant or otherwise unnecessary expenses." *Batt*, 241 F.3d at 894. If the plaintiff fails to exclude such expenses, I must. *Id.*

■ Olson asserts that he spent 214.2 hours on the merits of the litigation. Review of Heder's fee petition does not reveal any unnecessary expenses; and the City points to none. The litigation required discovery, legal research and lengthy briefing on cross dispositive motions when the case was first before me, and still more briefing and argument before the court of appeals. 214.2 hours is a reasonable amount of time.

### 2. Reasonableness of the Hourly Rate

■ "A 'reasonable' hourly rate should reflect the 'market rate' for the attorney's services." *Batt*, 241 F.3d at 894 (internal citation omitted). " '[T]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate.' " *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir.2003) (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir.1999)).

■ Here, Olson and Heder had fee agreements setting forth hourly rates— $125 per hour until March 16, 2000, and $135 per hour thereafter. Heder requests a fee award based on these amounts. Olson attests that these were the rates he charged to all his regular, hourly, paying clients; Heder was no exception. These rates are, therefore, the market rates and presumed reasonable. The City does not argue otherwise. Their reasonableness is further supported by an affidavit from another attorney practicing employment law in the same geographic area who states that the market rate for someone such as Olson would have been $150.

### 3. Adjustment of the Lodestar

■■ Multiplying the number of hours spent by the hourly rates results in a lodestar of $28,542. This is the presumptively reasonable fee. *City of Burlington*, 505 U.S. at 562, 112 S.Ct. 2638. However, the court can adjust the lodestar in light of several factors known as "the *Hensley* factors." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310–11 (7th Cir. 1996) ("*People Who Care I* ") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Many of these factors may be subsumed within the lodestar itself, in which case the court need not give them separate consideration. *Id.* The party advocating adjustment of the lodestar bears the burden of establishing that such an adjustment is necessary. *City of Burlington*, 505 U.S. at 562, 112 S.Ct. 2638; *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992). Here, Heder seeks to obtain fees equal to the amount of the lodestar, plus interest, and the City seeks a downward adjustment. Thus, the City bears the burden.

#### a. Degree of Success Obtained

■ The most important *Hensley* factor, which may not be subsumed within the lodestar, is the " 'degree of success obtained.' " *Spegon*, 175 F.3d at 550 (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933). Consideration of this factor is key where a plaintiff has prevailed on some but not all of his claims. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Whether Heder can obtain fees based on unsuccessful claims depends upon whether they are related to the successful ones. As the Seventh Circuit has explained,

> [W]hen claims are interrelated ... time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims. In such cases, much of counsel's time will

be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir.1998) (citing and quoting in part *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933) (internal quotation marks omitted). Thus, an attorney can recover fully for losing arguments, if raised in support of successful claims, and for losing claims, if raised in tandem with successful ones. *Id.* at 414; *see Merriweather v. Family Dollar Stores*, 103 F.3d 576, 584 (7th Cir.1996) (holding that attorney could recover for work on a discrimination claim on which plaintiff lost because successful retaliation claim could not have been tried effectively without it).

 *Hensley* reduces these considerations to a two-part test. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. First, the court should ask, "did the plaintiff fail to prevail on claims that were [ ]related to the claims on which he succeeded?" *Id.* Under *Hensley*, claims are related if they arise out of a common core of facts or have related legal theories. *Id.* If they are related, the court should then ask, "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* In addressing the second question, I consider the results the plaintiff achieved, not whether he prevailed on each legal claim or theory. *Jaffee*, 142 F.3d at 414. If the plaintiff obtained " 'all that he reasonably could have asked for,' " the plaintiff should be fully compensated. *Id.* (quoting *Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir.1987)); *accord Hensley*, 461 U.S. at 435, 103 S.Ct. 1933 ("Where a plaintiff has obtained excellent results, his

attorney should recover a fully compensatory fee."); *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir.1988) ("A partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley*.").

### i. Relatedness of the Claims

Here, plaintiff Heder prevailed on his FLSA claims but not on his state law claims. He also successfully defended against the City's counterclaim. All these claims concerned the City's compensation and reimbursement scheme for firefighters obtaining paramedic training. Thus, all the issues in the lawsuit arose out of a common core of facts and were, therefore, interrelated.

### ii. Whether the Level of Success Makes the Hours Spent Reasonable

 In evaluating Heder's level of success, I consider the results he obtained in light of the issues and amount of money that were in dispute. There were essentially three issues in dispute: (1) how overtime compensation for time spent in paramedic training should be calculated, (2) who was required to pay the expenses related to Heder's paramedic training, which consisted of the cost of tuition and books, pay Heder received for time spent in training and the premium pay he received once certified, and (3) if Heder had to pay, could the City recover those payments in the manner it did. $8,900 was at stake. As discussed above, when the merits of the case were before me, I resolved all of these disputes in Heder's favor; although, I did not agree with every legal theory Heder put forward. The court of appeals also resolved all of the disputes in Heder's favor, with one exception—Heder

could be required to pay for tuition and books. But even on that issue, the court of appeals held that the City could not recover those amounts by withholding money from Heder's paychecks if doing so would cause his wages to drop below the statutory minimum wage set by the FLSA. Thus, in the end, Heder was found to be entitled to at least $7,500 of the total amount in dispute, or 84.27%. This level of success and the interrelatedness of the issues leads me to conclude that no adjustment to the lodestar is needed.

First, considering the action as a whole, Heder achieved excellent results. The ultimate conclusions reached by the court of appeals gave Heder almost everything he asked for in this litigation. The fact that Heder sought slightly more than he ultimately received does not require me to adjust the lodestar. *Bankston*, 60 F.3d at 1256.

Second, the only point on which Heder did not prevail came when the case was on appeal, which appeal was initiated by the City. The Seventh Circuit has said,

> [W]hen the defendant appeals and the plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned by complete success, ordinarily he should be entitled to reimbursement of those fees; he had no choice but to incur them or forfeit his victory in the district court.

*Ustrak*, 851 F.2d at 990. By my calculation, Olson spent 87.8 hours on the merits of the litigation after the City appealed. Heder had no choice but to incur these expenses, which I have already determined to be reasonable. Thus, they are completely recoverable.

Third, the hours spent litigating the issues on which Heder prevailed are not severable from the hours spent litigating the sole issue on which he ultimately lost. The memorandum of agreement stated that Heder had to repay the City for tuition, books, wages and premium pay. Before me, he opposed all of these repayment obligations on the same grounds: (1) he never agreed to be bound by the memorandum of agreement, (2) the union membership did not ratify the agreement, (3) it could not deprive him of vested rights and (4) the requirements violated the FLSA. Heder would have incurred the expense of litigating these issues even if he had not challenged the repayment obligations relating to books and tuition, and only challenged the obligations on which he prevailed. Therefore, no adjustment to the lodestar is warranted.

### b. Proportionality of Fees to Damages

Another factor courts consider in deciding whether to adjust the lodestar is the proportionality of the lodestar to the damages recovered. *Spegon*, 175 F.3d at 558. The City argues that consideration of this factor requires that the lodestar be adjusted downward because Heder only obtained approximately $3,540. In support of its argument, the City cites *Gary v. Health Care Services, Inc.*, 744 F.Supp. 277, 278–81 (M.D.Ga.1990), *aff'd*, 940 F.2d 673 (11th Cir.1991), where the court reduced the lodestar in a FLSA action in which the plaintiff recovered $311.36 in damages while her counsel sought $26,710 in fees. However, there are several problems with the City's argument.

First, proportionality between fees and damages is not required. *Spegon*, 175 F.3d at 558. "To hold otherwise would in reality prevent individuals with relatively small claims from effectively enforcing their rights." *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 228–29 (7th Cir.1972). And "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the

case." *Holyfield v. F.P. Quinn & Co.*, No. 90 C 507, 1991 WL 65928, at *1 (N.D.Ill. Apr.22, 1991) (awarding $6,922.25 in fees and costs where the plaintiff had obtained a judgment for $921.50); *see Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) (affirming award of $7,680 in overtime compensation and $40,000 in attorneys' fees); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir.1990) (affirming an award of $1,181 in overtime compensation and $9,250 in attorneys' fees); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir.1983) (affirming award of $18,455 in damages and $100,000 in attorneys' fees).

Moreover, the proportionality inquiry is merely another way of evaluating the results the plaintiff obtained in light of what he sought. *See Spegon*, 175 F.3d at 558; *see also Hyde v. Small*, 123 F.3d 583, 585 (7th Cir.1997). I have already determined that Heder obtained almost everything he sought. *Gary* is not to the contrary. In *Gary*, the court reduced the lodestar because the plaintiff had sought more than $6,000 and obtained only $311.36, not because the attorneys' fees requested were higher than the amount the plaintiff recovered. *Gary*, 744 F.Supp. at 278–81.

Finally, and most importantly, from the beginning, there was very little money at issue in this case; and the City has only itself to blame for the disproportionality between the attorneys' fees incurred and the amount Heder recovered. Heder reasonably offered to settle the matter for $2,281 before the lawsuit was filed. The City refused, chose to litigate the legal issues, filed a counterclaim against Heder, and then chose to appeal, causing the attorneys' fees to climb higher and become more disproportionate to the amount of damages at issue. Heder then offered to settle the attorneys' fee issue for $25,000 in December 2002. Again the City refused, forcing Heder to file a fee petition

in order to recover and again causing the fees in increase. Neither Heder nor Olson should be forced to swallow expenses incurred largely as result of the City's approach to this litigation. *See City of Riverside v. Rivera*, 477 U.S. 561, 580–81 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion) ("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (internal citation and quotation marks omitted).

#### c. Awards in Similar Cases

The City also notes that courts have considered awards obtained in similar cases. *See People Who Care I*, 90 F.3d at 1311 n. 1. However, the City points to no similar case. The City cites *Gary* where the fee applicant obtained $5,977, or 40% of the lodestar. *Gary*, 744 F.Supp. at 278–81. However, for the reasons discussed above, *Gary* is not similar to the case before me because the plaintiff in *Gary* obtained substantially less than she sought; whereas, here, Heder recovered almost everything he requested. Thus, the City has failed to establish that consideration of this factor requires a reduction in the lodestar.

#### d. Other *Hensley* Factors

The City cites no other *Hensley* factors in support of its argument that the lodestar should be reduced. However, for the sake of completeness, I have considered them; and I conclude that none warrant downward adjustment of the lodestar here. The other *Hensley* factors are, (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the experience, reputa-

tion, and ability of the attorneys; (9) the undesirability of the case; and (10) the nature and length of the professional relationship with the client. *People Who Care I*, 90 F.3d at 1311 n. 1 (internal citation omitted). All of these factors are either irrelevant to the case before me or are incorporated into the calculation of the lodestar.

## B. Costs

██ Heder also seeks to recover $1,655.16 in costs for filing fees, service fees, postage, travel, depositions and photocopying. The amounts are reasonable. Again, the City does not argue otherwise. Thus, I will award Heder these costs as well.

## C. Enhancement for Delay

Heder requests an award of interest to compensate for the time between when his attorney billed for services and costs and the present.

### 1. Applicable Law

██ As discussed above, 29 U.S.C. § 216(b) requires that a prevailing plaintiff be fully compensated for the costs of bringing the action. *United Slate*, 732 F.2d at 502. Thus, a prevailing plaintiff is not only entitled to the amounts that the attorney would have billed and/or that the plaintiff paid, but the present value of those amounts. *See Missouri v. Jenkins*, 491 U.S. 274, 282–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Pennsylvania v. Del. Valley Citizens' Council*, 483 U.S. 711, 716, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

When a significant amount of time has passed since the fees and costs were incurred, the present value of the fees will be higher than their historical value because of inflation and the time value of money, meaning the return that the creditor could have obtained on the money had he been promptly paid. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir.1992). To compensate, the court must award what is sometimes called a "delay enhancement." *See Jenkins*, 491 U.S. at 283, 109 S.Ct. 2463; *Mathur*, 317 F.3d at 744–45; *Smith v. Vill. of Maywood*, 17 F.3d 219, 221 (7th Cir.1994) (finding that district court abused its discretion by failing to award prevailing plaintiff a delay enhancement to account for the five-year period between when the fees were incurred and when the award was entered); *Matter of Cont'l*, 962 F.2d at 571 (same result where delay was two years).

██ I note that most cases addressing delay enhancements for attorneys' fees arise in the context of contingency-fee agreements. However, the same rules and considerations apply to paying clients as well. A prevailing plaintiff who has paid her attorney over the course of lawsuit has been deprived of the use of that money in the same way that an attorney working on a contingency has been deprived. *See 305 E. 24th Owners Corp. v. Parman Co.*, 799 F.Supp. 353, 361–63 (S.D.N.Y.1992), *aff'd*, 994 F.2d 94 (2d Cir.1993). Thus, to fully compensate a paying plaintiff, the court must award her the present value of what she paid. In other words, the court must award a delay enhancement.[3]

---

**3.** *Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646 (7th Cir.1985) contains language which has been interpreted to mean that paying plaintiffs can only be compensated for inflation, and not the time value of their money. *Meyer v. Robinson*, No. IP 90–1351–C, 1995 WL 265035, at *5 (S.D.Ind. Mar.20, 1995) (recommendation of magistrate judge); Arthur J. Lachman, Note, *Attorney's*

*Fee Contingency Enhancements: Toward a Complete Incentive to Litigate Under Federal Fee–Shifting Statutes*, 63 Wash. L.Rev. 469, 492 n.111 (1988). However, the decision cannot support this conclusion. *Ohio–Sealy* concerned an award of attorneys' fees to a prevailing plaintiff in an antitrust action in which the plaintiff had paid its attorneys dur-

Determining present value exactly would make the awarding of attorneys' fees inadministrable. Thus, the Seventh Circuit has instructed courts to take one of two approaches which seek to approximate the present value of the fees: (1) recalculate the lodestar using the attorney's current hourly rate, or (2) assess interest on fees based on the attorney's hourly rate at the time fees were incurred. *Mathur*, 317 F.3d at 744–45; *see also Del. Valley Citizens' Council*, 483 U.S. at 716, 107 S.Ct. 3078.

The first approach, awarding fees at the attorney's current rates, may lead to a highly inaccurate result as many factors can cause an attorney's rates to rise (or fall, for that matter). *Matter of Cont'l*, 962 F.2d at 571.

> Changes in billing rates from year to year reflect at most only one component of an interest rate—the rate of inflation—and that component may be swamped by factors having nothing to do with the time value of money, such as the demand for and supply of the services of particular lawyers, firms, or specialties, or of the profession as a whole.

*Id.* Depending upon the length of the litigation, awarding fees at the current rate may either over- or under-compensate the plaintiff. *See Ohio–Sealy*, 776 F.2d at 663 (noting that "[w]hen a case lingers on for a long time, ... using current hourly rates may produce a windfall for the plaintiff"). However, it is an accepted method and its use will be upheld when it does not result in a windfall for either party. *See id.*

The second approach, awarding interest based on the attorney's historical rates, may lead to a more accurate result because the interest rate can take into account inflation and the time value of money, while minimizing the incorporation of other, irrelevant factors. The prime rate is the presumptively appropriate interest rate. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 n. 5 (7th Cir.1988); *Alberti v. Klevenhagen*, 896 F.2d 927, 938 (5th Cir. 1990), *vacated in part on other grounds by* 903 F.2d 352 (5th Cir.1990); *see E. Trading Co. v. Refco, Inc.*, No. 97–C–6815, 2001 WL 1117296, at *6–7 (N.D.Ill. Sept.24, 2001); *Shea v. Galaxie Lumber & Constr. Co.*, No. 94–C–906, 1999 WL 138791, at *4 (N.D.Ill. Mar.2, 1999), *aff'd*, 221 F.3d 1339 (7th Cir.2000); *Shakman v. Democratic Org.*, 844 F.Supp. 422, 426–27 (N.D.Ill. 1994) (Williams, J.); *Blumenthal v. G–K–G, Inc.*, No. 89–C–8693, 1993 WL 414686, at *5–6, 6 n. 9 (N.D. Ill. Oct. 13, 1993) (Williams, J.); *Lippo v. Mobil Oil Corp.*,

---

ing the course of the litigation. 776 F.2d at 649. The district court had enhanced the lodestar to account for the contingent nature of success and for inflation. The Seventh Circuit held that a contingency enhancement is only appropriate when a lawyer has forgone payment because it " 'compensate[s] for the possibility at the outset that the litigation would be unsuccessful and that no fee would be obtained' " and, thus refines the estimated market value for the attorney's services. *Id.* at 660 (quoting *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980)). However, the court held that enhancement for inflation was appropriate because a paying plaintiff must obtain fees in an amount equal to the purchasing power of the fees it paid. *Id.* The court never addressed whether enhancement for the time value of money was appropriate

for a paying plaintiff. Indeed, it is not clear that the issue was ever raised. And the Supreme Court has since made clear that enhancement for contingency is distinct from enhancement for delay, *Del. Valley Citizens' Council*, 483 U.S. at 724, 107 S.Ct. 3078 ("Although delay and the risk of nonpayment are often mentioned in the same breath, adjusting for the former is a distinct issue."), and has authorized enhancement for delay, even where enhancement for contingency might have been improper, *Jenkins*, 491 U.S. at 282–84, 109 S.Ct. 2463. Thus, a close reading of *Ohio–Sealy* and consideration of the decision in light of more recent Supreme Court decisions reveals that it is best interpreted as reaching no conclusion about the appropriateness of compensating a paying plaintiff for the time value of money.

692 F.Supp. 826, 839–42 (N.D.Ill.1988); *see also Cement Div., Nat'l Gypsum Co. v. City of Milwaukee*, 144 F.3d 1111, 1114 (7th Cir.1998); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1332 (7th Cir. 1992); *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989). This is because the prime rate reflects the cost of borrowing and, thus, approximates the cost of the loss of the use of the money and inflation. *Gorenstein Enterprises*, 874 F.2d at 436.

■■■ As for when interest begins to accrue, the court must consider when the work was performed and when the client was or would have been billed.[4] *See Smith*, 17 F.3d at 221; *Matter of Cont'l*, 962 F.2d at 571. Where a plaintiff actually paid the attorney for his or her services, interest begins accruing starting from the dates the plaintiff paid. *305 E, 24th Owners*, 799 F.Supp. at 363. Where the attorney took the case on contingency or deferred payment until the end of the case, the court must look to the market. *See People Who Care v. Rockford Bd. of Educ.*, 272 F.3d 936, 938 (7th Cir.2001) (*"People Who Care II "*).

The relevant market is the market of regular, fee-paying clients, not the fee-shifting or contingency-fee markets. *See City of Burlington*, 505 U.S. at 564–67, 112 S.Ct. 2638; *Venegas v. Mitchell*, 495 U.S. 82, 87–90, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990); *Blanchard v. Bergeron*, 489 U.S. 87, 95–96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Blum v. Stenson*, 465 U.S. 886, 895–96, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The "artificial market" of cases brought under statutes with fee-shifting provisions would scarcely exist if it were not for the fee-shifting provisions themselves. *City of Burlington*, 505 U.S. at 564, 112 S.Ct. 2638. Thus, "looking to *that* 'market' . . . is obviously circular." *Id.* Contingency agreements in personal injury litigation also do not provide a useful model because statutes with fee-shifting provisions serve public purposes by encouraging actions to vindicate federal rights and reliance on such contingency agreements would be more likely to lead to unpredictable and arbitrary results. *See City of Burlington*, 505 U.S. at 565–67, 112 S.Ct. 2638; *Venegas*, 495 U.S. at 87, 110 S.Ct. 1679; *Blanchard*, 489 U.S. at 96, 109 S.Ct. 939; *Del. Valley Citizens' Council*, 478 U.S. at 564, 106 S.Ct. 3088. Thus, in determining whether and when interest begins to accrue where a plaintiff has not paid during the course of the litigation, I look to the practices in the market of fee-paying clients.

For example, in *People Who Care II*, 272 F.3d at 938, the Seventh Circuit found improper the district court's decision to award interest starting from 30 days after the work was performed because the record contained no evidence that the attorneys billed their paying clients and expected payment all within 30 days. However, the court stated that if the record had contained evidence of such a practice, then the court's award would have been proper. *Id.*

### 2. Application of Law to Facts

■■■ Here, legal work began on this action in 1999 and now almost four years

---

**4.** The Seventh Circuit has on at least one occasion stated that interest does not begin to accrue until the judgment for attorneys' fees is entered. *See Fleming v. County of Kane*, 898 F.2d 553, 556 (7th Cir.1990). However, *Fleming* does not reflect the current law in this Circuit. Since *Fleming*, the Seventh Circuit has instructed courts to award interest on fees starting from when the work is performed. *Vill. of Maywood*, 17 F.3d at 221; *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 571; *see People Who Care II*, 272 F.3d at 937–38; *see also Meyer*, No. IP 90–1351–C, 1995 WL 265035, at *6 n. 7 (explaining why *Fleming* does not control).

have passed. Thus, Heder is entitled to a delay enhancement. Because he asks for an award of interest, rather than his current rates, and because interest is the more accurate method, I will award interest. Heder offers copies of the fee agreement and his counsel's billing records as evidence of what he was charged and when and what he paid. He asks for interest at 18% starting 30 days after each billing.

First, I address when interest should begin to accrue. As stated, under the agreement between Heder and Olson, interest began to accrue on balances unpaid 30 days after billing. Heder submits an affidavit from Olson stating that his firm has, since at least 1993, included this provision in all hourly-fee agreements. (R. 64 ¶ 12.) The affidavit further states that such provisions are the norm among law firms in the Manitowoc area where Olson works. (*Id.*) The City does not argue otherwise or submit any contrary evidence. Thus, the record before me indicates that the market practice is to charge interest on balances unpaid after 30 days. *See Mathur*, 317 F.3d at 743 (stating that attorney's practice is the presumptive market practice); *cf. People Who Care II*, 272 F.3d at 938.

For the portions of the fees and costs that Heder paid, I will also use 30 days from billing as the dates from which interest began to accrue. These dates do not precisely match the dates when Heder paid his portion. Sometimes he paid before the end of the 30 days and sometimes after. However, the dates are reasonably accurate, and Heder used these dates in the proposed calculations he filed with the court, to which the City did not object.

Next, I consider the interest rate. Heder asks for interest at 18%, the rate provided in the agreement. Delay enhancement is simply intended to make the award equal the present value of the fees and costs and, thus, make the plaintiff and his attorney whole. *See Matter of Cont'l*, 962 F.2d at 571. However, the record contains no evidence that 18% interest is required to serve this purpose. The record does not, for example, show that Olson's firm paid 18% interest to borrow money and that, therefore, 18% reflects the time value of money for the firm. Heder also asks for 18% interest on the fees he paid on the grounds that he paid a portion using his credit card. However, he offers no evidence of how much he paid by credit card or how much interest he was charged. In the absence of evidence that funding the litigation in this case actually cost Heder or Olson 18% interest, I will award interest at the rate presumed appropriate—the prime rate.[5]

The table below illustrates my calculations. I have used the billing amounts and dates and followed the method of calculation set forth in Olson's affidavit (R. 64 Ex. B at 13), to which the City did not object.[6] However, I have changed the interest rate as discussed above. Columns A and B show the dates on which Olson billed Heder and the amounts of each bill. Column C, entitled "Date Due," shows the dates by which Heder was required to pay before interest would begin to accrue, according to Olson's affidavit. Column D shows the prime rates on each corresponding date in column C. Column E shows the monthly rates; that is, the prime rates in column D divided by 12. Column F shows the interest that accrued each month (column B ×

5. *See also Lippo*, 692 F.Supp. at 840 (holding that above-market interest rates actually paid by law firm representing prevailing party cannot be shifted to defendant, rather, market interest rates always apply).

6. Heder requests only simple interest; although, I note that "compound ... interest is the norm in federal litigation," *Amoco Cadiz*, 954 F.2d at 1332.

column F). Column G shows the number of months that have passed from the due dates for payment listed in column C until April 1, 2003, the approximate date of this decision. Finally, column H shows the total interest accrued to date on each bill (column F × column G). The sum of the amounts in column H equals the total interest accrued, which appears at the bottom of the column.

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| Date of Bill | Amount of Bill | Date Due | Prime Rate | Rate/ Month | Interest/ Month | # of Months | Interest Accrued to Date |
| 9/27/99 | $1,250.00 | 11/1/99 | 8.25% | 0.69% | $ 8.63 | 41 | $ 353.83 |
| 12/9/99 | $ 87.50 | 1/1/00 | 8.50% | 0.71% | $ 0.62 | 39 | $ 24.18 |
| 3/16/00 | $3,176.20 | 4/16/00 | 9.00% | 0.75% | $ 23.82 | 35.5 | $ 845.61 |
| 8/16/00 | $1,890.00 | 9/16/00 | 9.50% | 0.79% | $ 14.93 | 30.5 | $ 455.37 |
| 11/10/00 | $8,605.70 | 12/1/00 | 9.50% | 0.79% | $ 67.99 | 28 | $1,903.72 |
| 1/21/01 | $2,322.00 | 3/1/01 | 8.50% | 0.71% | $ 16.49 | 25 | $ 412.25 |
| 6/29/01 | $ 580.50 | 8/1/01 | 6.75% | 0.56% | $ 3.25 | 20 | $ 65.00 |
| 10/31/01 | $ 445.50 | 12/1/01 | 5.00% | 0.42% | $ 1.87 | 16 | $ 29.92 |
| 2/13/02 | $6,871.65 | 3/13/02 | 4.75% | 0.40% | $ 27.49 | 12.5 | $ 343.63 |
| 9/19/02 | $2,009.61 | 10/19/02 | 4.75% | 0.40% | $ 8.04 | 5.5 | $ 44.22 |
| | | | | | | TOTAL | $4,477.72 |

Therefore, I award a delay enhancement of $4,477.72.

### D. Attorneys' Fees for Preparing the Fee Petition

■ A prevailing FLSA plaintiff can also obtain reasonable attorneys' fees for time spent obtaining fees. *Batt*, 241 F.3d at 893–94. I apply the same approach to this calculation as I did in determining the plaintiff's entitlement to fees for work relating to the merits of the litigation. *Id.*

#### 1. Reasonableness of Hours and Rate

Olson asserts that he spent 18 hours preparing the fee petition. However, because he had never filed a fee petition before, he states that it took him more time than it reasonably should have. Thus, he requests reimbursement for only 12 of the 18 hours spent. Again, the City does not argue that this is an unreasonable amount of time.

■ In evaluating the number of hours spent on a fee request, I must consider whether they are reasonable and "bear a rational relation to the number of hours spent litigating the merits." *Spegon*, 175 F.3d at 554. I conclude that 12 hours bears a rational relationship to the amount of time spent on the merits. (12 is 5.6% of 214.5, the number of hours spent on the merits.) *See id.* (allowing 1.6 hours for attorneys' fees where plaintiff's attorney sought fees for 25 hours of work, or 6.4%). I recognize that 12 hours is more time than other courts have found reasonable. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir.1999) (finding that district court did not abuse its discretion in reducing number of hours reasonably spent on fee petition from 9.9 hours to 1.6 hours). However, the City made clear in conferences before this court that it intended to litigate the fee issue with the same unyielding tenacity that it had brought to almost every issue other in this litigation, and rejected Heder's offer to settle the issue of attorneys' fees and costs for $25,000. Thus, Heder was compelled to do considerable legal work to justify his petition; and that work is reflected in his

supporting briefs. In addition, Heder's argument for an award of interest consistent with the fee agreement required more than the usual amount of legal research and explanation. Therefore, his request to be reimbursed for 12 hours for preparing the fee petition is reasonable.

Olson states that he charged Heder $135 per hour for these services, and I have already determined that this rate is reasonable.

### 2. Adjustment of the Lodestar

Multiplication of the hours and the rate results in a lodestar of $1,620. I conclude that adjustment of the lodestar is not warranted because Heder obtained almost everything he requested. I have awarded Heder most of what he asked for, except that I reduced the interest rate to the prime rate. This small reduction does not warrant an adjustment of the lodestar. Regardless of the amount of the delay enhancement or interest rate sought, Heder would have been required to research and discuss their relationship to the practices in the market. No other *Hensley* factors warrant adjustment of the lodestar. Heder is, therefore, entitled to $1,620 for time spent obtaining attorneys' fees.[7]

### III. CONCLUSION

In sum, Heder is entitled to $36,204.88 in attorneys' fees and costs ($28,452 in attorneys' fees for time spent on the merits + $1,655.16 in costs + $4,477.72 as a delay enhancement + $1,620 in attorneys' fees for time spent obtaining fees).

**THEREFORE, IT IS HEREBY ORDERED** that plaintiff's motion for attorney fees and costs is **GRANTED IN PART AND DENIED IN PART.**

---

**7.** Heder seeks no delay enhancement for these fees. And given that very little time has

**IT IS FURTHER ORDERED** that the City pay to Heder $36,293.24 in attorneys' fees and costs.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that the judgment previously entered on December 10, 2002 is hereby amended and that defendant City of Two Rivers shall pay to plaintiff Christopher Heder the amount of $3,539.91 in damages and $36,293.24 in attorneys' fees and costs.

passed, any cost of delay would be minimal.